

ROPES & GRAY LLP
PRUDENTIAL TOWER
800 BOYLSTON STREET
BOSTON, MA 02199-3600
WWW.ROPESGRAY.COM

November 3, 2016

Robert A. Skinner
T +1 617 951 7560
F +1 617 235 0434
robert.skinner@ropesgray.com

**BY ECF**

Hon. P. Kevin Castel
United States District Court for the
   Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *Engel v. Third Avenue Management, LLC, et al.*, No. 16-cv-1118

Dear Judge Castel:

      We represent defendants William E. Chapman, II, Lucinda Franks, Edward J. Kaier, Patrick Reinkemeyer, Eric P. Rakowski, Martin Shubik and Charles C. Walden, who are the independent members of the Board of Trustees (the "Independent Trustees") of the Third Avenue Trust (the "Trust"), in the above-captioned matter. In accordance with Section 4.A.1 of Your Honor's Individual Practices, we respectfully write on behalf of the Independent Trustees and the remaining defendants – Third Avenue Management Company LLC (the "Adviser"), trustee Martin J. Whitman and former trustee David M. Barse – to respond to the pre-motion letter submitted on October 28, 2016 by proposed intervenor Daniel Krasner ("Intervenor Letter").

      As an initial matter, pursuant to Your Honor's suggestion in the related securities class action, the parties in all of the related Third Avenue matters pending in this Court have agreed to participate in a global mediation of the securities and derivative actions. Mr. Krasner and his counsel were invited to take part in that mediation (in light of the pending Delaware action), and they have accepted the invitation. That mediation will be held on December 13, 2016. In light of the imminent mediation, the defendants believe now is an inappropriate time for Mr. Krasner to initiate new proceedings in this Court before the mediation, which could end up resolving all disputes among the various parties. Nevertheless, the defendants will respond below to the Intervenor Letter.

      The defendants take no position on whether Mr. Krasner is a more "adequate" representative of the interests of the Trust and its shareholders for purposes of pursuing derivative claims in this action. However, the defendants reject Mr. Krasner's assertions in the Intervenor Letter that this Court is without subject matter jurisdiction over this case. Putting aside questions of Mr. Krasner's standing to argue jurisdictional points before he has been allowed to intervene – and cognizant of

ROPES & GRAY LLP

Hon. P. Kevin Castel — - 2 - — November 3, 2016

the Court's discretion to consider its jurisdiction *sua sponte* – we summarize below why the Court has both diversity and federal question jurisdiction here.  The defendants also oppose Mr. Krasner's second request to intervene.  He is not an indispensable party, and his joinder would destroy diversity (although federal question jurisdiction would still exist).  Moreover, Mr. Krasner's request is effectively an untimely motion for reconsideration of the Court's previous decision in April 2016 rejecting his request to intervene.  Given the fully-briefed Motion to Dismiss Mr. Engel's extant Amended Complaint and the mediation scheduled for December 13, 2016 (which Mr. Krasner's counsel will be attending), it would be wasteful at this juncture to allow intervention.  Finally, the Court should not exercise its discretion to stay this case under the *Colorado River* abstention doctrine, as requested by Mr. Krasner.

**I.       The Court Has Subject Matter Jurisdiction**

In the event the Court is inclined to consider Mr. Krasner's arguments regarding subject matter jurisdiction before determining whether he should be allowed to intervene, the defendants submit that his jurisdictional arguments are without merit.

**A.       Diversity Jurisdiction Exists**

There is complete diversity of citizenship between plaintiff William Engel (a citizen of Vermont) and the named defendants – *i.e.*, the Independent Trustees, the Adviser, Mr. Whitman and Mr. Barse – none of whom is a citizen of Vermont.  *See* Am. Compl. ¶¶ 20-31 (ECF 30); Notice of Removal ¶¶ 3-8 (ECF 1).  For purposes of diversity jurisdiction, the citizenship of the Trust – a nominal defendant only – is not considered.  *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").  Mr. Krasner's assertion in the Intervenor Letter that the Trust's citizenship destroys diversity is therefore incorrect.[1]

The Trust, organized as a Delaware statutory trust, is a registered investment company under the federal Investment Company Act of 1940 (the "ICA").  The Third Avenue Focused Credit Fund (the "Fund"), a mutual fund, was offered to investors as a series of the Trust.  As is typical for

---

[1]   By way of procedural background, the original Complaint in this action was filed by Mr. Engel in the Supreme Court of the State of New York for the County of New York on January 15, 2016.  The defendants timely removed to this Court on February 12, 2016, asserting both diversity and federal question jurisdiction.  *See* Notice of Removal (ECF 1), Joinder of Defendant David M. Barse (ECF 3), Joinder of Defendant Martin J. Whitman (ECF 10).  When Mr. Engel later filed the Amended Complaint on March 8, 2016, he affirmatively alleged the existence of diversity jurisdiction under 28 U.S.C. § 1332.  Am. Compl. ¶ 18.  The Amended Complaint dropped certain individual defendants from the original Complaint and added others.  Mr. Engel is the sole plaintiff named in both pleadings, and no defendant in either is alleged to be a citizen of Vermont.  The Trust is named as only a "Nominal Defendant" in both Complaints.

ROPES & GRAY LLP

Hon. P. Kevin Castel                              - 3 -                              November 3, 2016

mutual funds, the Trust is a set of portfolios of assets the management of which is entirely externalized through contractual arrangements with the Adviser and other third-party service providers – subject to the oversight of the Trust's board of trustees. Mr. Engel purports to bring derivative claims on behalf of the Trust against the Adviser and the trustees (comprising the Independent Trustees and Messrs. Whitman and Barse) for alleged failings in the management of the Fund's portfolio. Nowhere does the Amended Complaint assert any wrongdoing on the part of the Trust or seek any relief from the Trust – nor could it. Accordingly, the Amended Complaint properly treats the Trust as only a "Nominal Defendant" (Am. Compl. ¶ 21) and not a true party to the controversy, because there is no "legally sufficient and factually arguable claim for relief against it." *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 279 (S.D.N.Y. 2001). The Trust's citizenship is thus disregarded for purposes of diversity.

Mr. Krasner's focus on the Supreme Court's recent decision in *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012 (2016), is misplaced. *Americold* involved a real estate investment trust ("REIT") that was a true party in interest to the dispute in that case. In a contract dispute over compensation for goods lost in a warehouse fire, the goods' owners sued the REIT directly in its capacity as the warehouse's owner. There were no derivative claims asserted. The Supreme Court determined that the citizenship of the REIT for diversity purposes is determined by the citizenship of its underlying investors. *Id.* at 1016. But that analysis (and whether it would apply equally to the Trust) has no bearing in this case, because the Trust here is a nominal defendant only, and its citizenship is thus disregarded for diversity purposes.

### B.   Federal Question Jurisdiction Exists

In addition, the Court also has federal question jurisdiction under 28 U.S.C. § 1331. In the Amended Complaint, Mr. Engel asserts claims for breach of fiduciary duty and breach of contract; however, these alleged breaches are based solely on supposed violations of *federal* law. As Mr. Engel has fashioned his claims, the defendants allegedly failed to comply with the ICA – a federal statute – and SEC rules thereunder, and it is these failures that constitute the alleged breaches of fiduciary duty and breach of contract against defendants. Where, as here, ostensibly state law claims necessarily "present significant, disputed questions of federal law," federal question jurisdiction is held to exist. *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (stating the "*Gunn-Grable*" factors, under which "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress" (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

The opening paragraphs of the Amended Complaint make clear that the plaintiff's ostensible state law claims necessarily rely upon alleged violations of federal law. Mr. Engel brings his action to recover damages allegedly sustained "as a direct result of Defendants' failure to comply with their most fundamental and basic duty – to manage and maintain sufficient liquidity for the Fund to

ROPES & GRAY LLP

Hon. P. Kevin Castel                                  - 4 -                                  November 3, 2016

stay open and in business." Am. Compl. ¶ 1. This "most fundamental and basic duty" is alleged to arise under Section 22(e) of the ICA, which "provides that, absent 'unusual circumstances,' no open-end mutual fund shall suspend the right of redemption for more than seven days." *Id.* ¶ 2. The Amended Complaint alleges that because the defendants "failed to ensure that the Fund had sufficient liquidity to allow this right of redemption to be preserved" – *i.e.*, the statutory right of redemption under ICA § 22(e) – the defendants "*thereby breached* their most fundamental and basic *fiduciary and contractual duties owed to the Fund*." *Id.* (emphasis added). This is the plaintiff's core theory: that the defendants breached their common law duties by violating federal law. *See also id.* ¶ 4 ("By failing to plan for and maintain the liquidity of the Fund to ensure the [§ 22(e)] right of redemption was not abridged, Defendants breached those legal duties in contravention of the [ICA] and federal securities regulations as well as the Fund's registration statements and prospectuses" which are governed by the Securities Act of 1933). The Amended Complaint goes on to allege (erroneously) that the standard for the "sufficient liquidity" that allegedly was not met is *also* provided by federal law: "The SEC has adopted a requirement limiting funds to have only 15% of illiquid assets, and it has issued repeated guidance advising fund managers that they must maintain liquidity to meet redemptions even if their investment strategy involves trading illiquid investments." Am. Compl. ¶ 8; *see also id.* ¶ 72 (alleging that the adviser "breached its fiduciary duties to the Fund by failing to sufficiently manage and plan for the Fund's liquidity and caused the Fund to violate Section 22(e) of the Act and SEC rules and regulations"). The action in this Court necessarily raises questions of federal law.

Mr. Krasner fails in his attempt to thwart federal question jurisdiction by brushing aside the other three "*Gunn-Grable*" factors. First, Mr. Krasner's own example of a federal provision that is "not disputed" demonstrates the divergence in the parties' views. He claims that the "clear mandate" of the SEC's rules is that mutual funds must "avoid *holding* illiquid assets exceeding 15% of a fund's asset value." Intervenor Letter at 4 (emphasis added). Defendants have already disputed this very point in their briefing before this Court. Mem. in Supp. of Mot. by the Independent Trustee Defs. To Dismiss the Compl. (ECF 70) at 5 ("Contrary to Plaintiff's suggestion that the Fund's illiquidity restriction prohibited it from ever holding more than 15% of its assets in illiquid securities at any point in time . . . the 15% threshold fact applies at the *time of purchase*."); Reply Mem. of Law (ECF 89) at 8-9 (presenting further argument on this point). Second, Mr. Krasner bases his conclusion that the federal question is not "substantial" on an out-of-circuit case that adopts an especially narrow test for whether a federal issue is substantial. The Court of Appeals has recognized, by contrast, that "substantiality . . . is not susceptible to bright-line analysis . . . [and] must be determined based on a careful, case-by-case judgment." *NASDAQ OMX Grp.*, 770 F.3d at 1028 (internal quotation marks omitted). In exercising that judgment, the Court of Appeals has recognized the importance of "preserving and strengthening the operation of national securities markets." *Id.* at 1024-25 (alterations omitted). The rules pertaining to investor redemption rights and liquidity management in mutual funds are fundamentally important to the national economy, the regulation of funds, and future legal actions like the present case. Finally, Mr. Krasner adopts strained arguments to suggest that the resolution of this claim in federal court would disrupt the federal-state balance approved by Congress. *See* Intervenor Letter at 5. That

ROPES & GRAY LLP

Hon. P. Kevin Castel — - 5 - — November 3, 2016

federal law does not preempt the state-law claims for relief does not suggest that derivative actions should not continue to be heard in federal court in appropriate cases. Similarly, there is no basis for Mr. Krasner's implicit argument that because state courts have the ability to decide some federal questions, cases involving both state and federal issues must not belong in federal court.

The Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. ___, 136 S. Ct. 1562 (2016), on which Mr. Krasner relies, has nothing to do with the issue raised here. *Manning* did not change well-established law about the removability of cases that raise questions of federal law. It held only that the Securities Exchange Act's jurisdictional provision was not *broader* than the general federal-question jurisdictional statute (28 U.S.C. § 1331). Inasmuch as the defendants based their removal on § 1331, *Manning* is irrelevant here.

## II.     Mr. Krasner's Renewed Request for Intervention Should be Denied

Mr. Krasner's renewed request to intervene as a plaintiff should be denied for at least two independently sufficient reasons.

First, Mr. Krasner's renewed attempt to intervene in this action – for the purpose of seeking to have it dismissed or stayed – is untimely. Rule 24 requires a "timely" motion for intervention (whether or not sought as a matter of right), and Local Rule 6.3 requires that motions for reconsideration of an order denying a motion be brought within 14 days of the disposition on the original motion. This Court denied Mr. Krasner's original motion to intervene, on the basis of his then-pending Delaware request for books and records, on April 21, 2016. He did not move for reconsideration either at that time, or after the Delaware Court granted his request for additional books and records three months ago on July 28, 2016. Mr. Krasner then filed his Delaware complaint on August 24, 2016 in reliance on the books and records obtained. Only two months later, on October 28, 2016, has he requested that this Court revisit its rejection of his request to intervene.

In the six months that have passed since his original motion, the parties have fully briefed the Motion to Dismiss the Amended Complaint in this action, and have agreed to pursue mediation. As discussed, Mr. Krasner and his counsel will also participate. Under these circumstances, and especially given the significant resources that have been devoted to this litigation, Mr. Krasner's eleventh-hour attempt to reshape the caption in this case – and thereby threaten the Court's jurisdiction – is unnecessarily disruptive and should not permitted.

Second, Mr. Krasner's joinder as a plaintiff would destroy diversity of citizenship among the parties and threaten the Court's subject matter jurisdiction to the extent predicated on diversity. Mr. Krasner is a citizen of New York, as are a number of the defendants. Intervention must be denied where, as here, the proposed intervenor's claim existed at the time the lawsuit was filed and the joinder of the proposed intervenor would destroy diversity jurisdiction. *Balestriere PLLC v. CMA Trading, Inc.*, 11-cv-9459, 2014 WL 929813, at *20-24 (S.D.N.Y. Mar. 7, 2014) (holding that

ROPES & GRAY LLP

Hon. P. Kevin Castel                          - 6 -                          November 3, 2016

intervention would destroy the complete diversity required under 28 U.S.C. § 1332 and that 28 U.S.C. § 1367(b) explicitly prohibits the exercise of supplemental jurisdiction in these circumstances). Mr. Krasner is not an indispensable party to this action under Fed. R. Civ. P. 19, and does not claim to be. While he asserts a right to intervene as of right under Rule 24(a) based on personal interests he feels will not be adequately represented by Mr. Engel (an issue on which the defendants take no position), this claim of inferior representation does not establish Mr. Krasner as an indispensable party under Rule 19. *See MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006) (discussing the interrelation of Rule 19 and Rule 24).

### III.     The Court Should Not Abstain

Mr. Krasner's request to stay this action under the *Colorado River* doctrine should be denied. Given "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," abstention under this doctrine is suitable only in "exceptional" circumstances. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976). The Court should retain jurisdiction unless the case presents "the clearest of justifications that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 25-26 (1983) (internal quotation marks omitted). Such justifications are lacking here.

First, Mr. Krasner is advancing this argument at an inappropriate time in the proceedings. When courts make the rare decision to abstain under *Colorado River*, they do so "for reasons of 'wise judicial administration, giving regard to conservation of judicial resources.'" *Frydman v. Verschlesier*, 172 F. Supp. 3d 653, 663 (S.D.N.Y. 2016) (quoting *Colorado River*, 424 U.S. at 817). If Mr. Krasner hoped to facilitate those objectives, he could easily have argued for abstention in the weeks between his filing in Delaware and this Court's denial of his motion to intervene. *See* Verified Compl., *Krasner v. Third Avenue Tr.*, C.A. No. 12113-VCL (Del. Ch. Mar. 17, 2016); Mem. and Order (ECF 56) (denying, on Apr. 21, 2016, Mr. Krasner's motion to intervene in this Court). Mr. Krasner instead litigated his motion to intervene without raising *Colorado River* and then allowed more than six months to pass before pressing for abstention. His argument is untimely and should be dismissed. *See, e.g.*, *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 10-cv-2333, 2013 WL 822173, at *12 (S.D.N.Y. Mar. 6, 2013) (rejecting invitation to decline jurisdiction where the party raising the point "could—and should—have raised it earlier in the litigation").

Second, the plaintiff's reliance on federal law weighs strongly in favor of this Court retaining jurisdiction. As discussed, the state law claims necessarily rely on duties imposed by federal law. *See supra* at 3-4. Abstention is disfavored where, as here, federal law "form[s] the basis and background under which the [state law claims] must be analyzed." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999); *see also In re Bank of Am. Corp. Secs., Deriv., and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 346 (S.D.N.Y. 2010) (the presence of federal issues are an especially important consideration when "important federal policies are implicated"). Even if Mr. Krasner were correct in his argument that this case turns on Delaware

ROPES & GRAY LLP

| | | |
|---|---|---|
| Hon. P. Kevin Castel | - 7 - | November 3, 2016 |

law, this would not be a reason to favor abstention. *See Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) ("[O]nly in some rare circumstances may the presence of state law issues weigh in favor of surrender of federal jurisdiction." (alterations and internal citations omitted)). Mr. Krasner's attempt to justify abstention by portraying the state law claims for relief as novel or "developing," Intervenor Letter at 6-7, is unpersuasive. Federal courts routinely adjudicate derivative actions involving Delaware law on director oversight liability, including in cases where plaintiffs allege that a gross negligence standard applies. *See, e.g.*, *In re Sonus Networks, Inc. S'holder Deriv. Litig.*, 499 F.3d 47, 67 (1st Cir. 2007); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 880 (D. Md. 2005). If anything is novel about this case, it is its reliance on federal standards, not its exploration of developing questions of state law.

Finally, while Mr. Krasner claims that the remaining *Colorado River* factors are "not at issue," Intervenor Letter at 7 & n.2, several of those factors also favor this Court's continued jurisdiction. *See Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (because "the balance is heavily weighted in favor of the exercise of jurisdiction . . . , the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it" (alterations and internal quotation marks omitted)). The absence of overlapping claims of jurisdiction over property weighs against abstention. *In re Bank of Am. Corp.*, 757 F. Supp. 2d at 345 ("The first factor favors the exercise of jurisdiction, because this is not an *in rem* action."). Similarly, the fact that Mr. Krasner is a citizen of New York, Intervenor Letter at 2, is not a neutral point. Rather, "where the federal court is just as convenient as the state court, that factor favors retention of the case in federal court." *Vill. of Westfield*, 170 F.3d at 122 (internal quotation marks omitted). In the absence of exceptional circumstances to justify abstention under *Colorado River*, this Court should retain jurisdiction over the case.

                                                  Respectfully submitted,

                                                  /s/ Robert A. Skinner

                                                  Robert A. Skinner

cc: All Counsel (by ECF)